UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARK J. PATNOD, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION |
| | ) | NO. 04-10865-GAO |
| v. | ) | |
| | ) | |
| DAVID NOLAN, Superintendent, | ) | |
| Massachusetts Correctional Institution | ) | |
| at Cedar Junction, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF LAW IN
## SUPPORT OF PETITION OF MARK J. PATNOD FOR
## POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. §§2241 AND 2254

### INTRODUCTION

The question raised by this petition is whether petitioner Mark J. Patnod, who was

convicted of armed robbery and other offenses in a Massachusetts trial court, is entitled to

federal habeas corpus relief, when the Commonwealth of Massachusetts ("Commonwealth")

used tainted identification evidence to secure his conviction, failed to disclose material

exculpatory evidence, and committed other violations of his rights under the Fifth, Sixth, and

Fourteenth Amendments to the United States Constitution. The charges arose from a robbery

and knifing of a taxi driver that occurred in Worcester, Massachusetts in 1989. The case turned

on identification. Mr. Patnod's defense was that he was not present and did not participate in the

crime. After his conviction, he learned of the Commonwealth's failure to disclose exculpatory

evidence (agreements with prosecution witnesses), and filed a motion for new trial on that and

other grounds. The Worcester Superior Court denied that motion after an evidentiary hearing on the issue of the undisclosed agreements.

On direct appeal, the Massachusetts Appeals Court affirmed the Superior Court's original judgments and its denial of the motion for a new trial. The Supreme Judicial Court of Massachusetts denied further appellate review. Mr. Patnod has therefore exhausted his state remedies. As demonstrated below, the adjudication of his constitutional claims in the state courts resulted in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, and resulted in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Mr. Patnod is currently being held in custody in violation of the Constitution of the United States. Pursuant to 28 U.S.C. §§2241 and 2254, this Court should grant the writ of habeas corpus and order Mr. Patnod's release.

## PROCEDURAL HISTORY

A complaint issued against Mark Patnod in District Court in Worcester County, Massachusetts on December 1989 (No. 89-16303), charging him with one count each of assault with intent to murder, in violation of M.G.L. c. 265, §15; armed robbery, in violation of M.G.L. c. 265, §17; kidnapping, in violation of M.G.L. c. 265, §26; and assault and battery with a dangerous weapon, in violation of M.G.L. c. 265, §15A. A similar complaint issued against a co-defendant, Gary Chaffee.

On March 8 and 9, 1990, a probable cause hearing in Mr. Patnod's and Mr. Chaffee's cases took place in Worcester District Court (Fox, J.). A court-appointed attorney, Herbert Bober, represented Mr. Patnod. The court found probable cause on all four counts against Mr. Patnod.

2

On April 12, 1990, a Worcester County, Massachusetts grand jury returned five

indictments against Mr. Patnod, charging him with assault with intent to murder (No. 90-1215,

pursuant to M.G.L. c. 265, §15); armed robbery (No. 90-1216, M.G.L. c. 265, §17); kidnapping

(No. 90-1217, M.G.L. c. 265, §26); assault and battery with a dangerous weapon (No. 90-1218,

M.G.L. c. 265, §15A); and larceny of a motor vehicle (No. 90-1219, M.G.L. c. 266, §28).

Appendix to Massachusetts Appeals Court Brief filed by Mr. Patnod, at 36-40.[1]  Mr. Patnod's

case and that of Mr. Chaffee were severed before trial.  Mr. Patnod was represented in Worcester

Superior Court proceedings by attorney Leonard Mancuso.

Mr. Patnod filed pretrial discovery motions on June 8, 1990, seeking, *inter alia*,

disclosure of agreements between the Commonwealth and prosecution witnesses, A. 41-42, and

of promises, rewards, or inducements given to such witnesses. A. 43-44. The Court granted the

motions. A. 330. At no time did the Commonwealth disclose any information regarding any

agreement with a prosecution witness, or regarding any promises, rewards, or inducements

offered to a prosecution witness. A. 330, 336. Neither Mr. Patnod nor his trial counsel had

independent knowledge of any such information. A. 336.

On October 25, 1990, Mr. Patnod moved to suppress all identifications of him by two

witnesses, Daniel Archibald and Sheryl Watkins, and to dismiss the charges against him, on the

grounds that unduly suggestive identification procedures had tainted all subsequent

identifications by those individuals. A. 45-52. After a hearing on November 28, 1990, the trial

---

[1]  The Appendix to Mr. Patnod's Massachusetts Appeals Court brief appears as Document No. 2 in the Supplemental Answer filed by the Commonwealth in this case on or about February 3, 2006 ("Supplemental Answer"). That appendix will be cited hereinafter as "A." The Supplemental Answer did not include transcripts. Copies of the transcripts of the probable cause hearing, hearing on the motion to suppress, trial, and evidentiary hearing on the motion for new trial are filed herewith. The trial transcript will be cited as "Tr."; the transcript of the probable cause hearing will be cited as "P.C.Tr."; and transcripts of the hearings on the motion to suppress and motion for new trial will be cited as "M.Tr." and "N.Tr." (followed by volume number), respectively.

3

court (Travers, J.) suppressed evidence of any identification from a single photograph of Mr. Patnod that the Worcester Police had shown to Mr. Archibald, but otherwise denied the motions. M.Tr. 92-107.

Trial took place before the Superior Court (Mulkern, J.) and jury on November 30 and December 3, 1990. On December 3, 1990, the jury returned a verdict of guilty on all indictments. Tr. 392-95. Mr. Patnod was sentenced to 30 to 40 years at the Massachusetts Correctional Institution ("MCI") in Cedar Junction, Massachusetts on the armed robbery charge, with concurrent sentences of 18 to 20 years on the charge of assault with intent to murder and 9 to 10 years on each of the remaining charges. Tr. 405-07.

On July 22, 1991, the Massachusetts Appeals Court granted Mr. Patnod permission to file a late notice of appeal *pro se*. A. 142. After appointment of counsel, change of counsel, and stays due to the filing of a motion for new trial, the Appeals Court, on December 16, 1997, vacated the original notice of assembly of record and entry of the appeal, without prejudice to reentry following the issuance of a new notice of assembly of the record. A. 401.

Mr. Patnod filed a motion for post-conviction relief in Worcester Superior Court on October 1, 1996, and amended the motion on December 6, 1999. A. 143, 415a. In compliance with Mass. R. Crim. P. 30(c)(3), Mr. Patnod, on October 1, 1996, filed five affidavits together with his motion for new trial (those being the Affidavits of Maria Scozzafava, Gary Chaffee, Leonard N. Mancuso, Mark J. Patnod, and Eileen M. Hagerty). A. 143-151, 320-398. He filed various discovery motions in connection with that motion, including a motion for discovery of records relating to Susan Chaffee, filed March 3, 1997 (A. 399-400), and a motion for further discovery of records relating to Ms. Chaffee, one Roland Gallant, and himself, filed September

4

16, 1999 and supplemented October 5, 1999 (A. 402-414). The latter motion was heard on September 24, 1999, and subsequently denied. A. 415.

An evidentiary hearing on Mr. Patnod's motion for new trial was held in Worcester Superior Court (Fecteau, J.) on December 6, 7, and 30, 1999.[2] Oral testimony at the hearing was limited to issues concerning the Commonwealth's agreements with prosecution witnesses.[3] Following the parties' submission of proposed findings and conclusions and oral argument on November 13, 2000, the Superior Court denied the motion by memorandum decision dated December 22, 2000, amended on January 8, 2001. A. 520-533.[4]

Mr. Patnod subsequently appealed both from his original convictions and from the denial of his motion for new trial. A. 534, 535. On February 26, 2003, after briefing and oral argument, the Massachusetts Appeals Court issued its Memorandum and Order Pursuant to Rule 1:28,[5] which affirmed the judgments and orders of the trial court. Neither party sought rehearing in the Massachusetts Appeals Court.

---

[2]    The matter was assigned to Judge Fecteau because the trial judge had retired.

[3]    The court also accepted and considered other evidence, including affidavits and transcripts.

[4]    The decision also appears as an addendum (pp. Add.-3 to Add.-16) to Mr. Patnod's principal brief on appeal to the Massachusetts Appeals Court, which appears as Document No. 1 in the Supplemental Answer. That brief is hereinafter cited as "Petitioner's Appellate Brief." The Commonwealth's brief to the Massachusetts Appeals Court appears as Document No. 3 in the Supplemental Answer. Mr. Patnod's reply brief to the Massachusetts Appeals Court (hereinafter cited as "Petitioner's Appellate Reply Brief") appears as Document No. 4 in the Supplemental Answer. The reply brief is not an actual copy, but is apparently a computerized reprint. Mr. Patnod will furnish a copy of the actual reply brief if the Court so desires.

[5]    A copy of the Massachusetts Appeals Court's decision (*Commonwealth v. Patnod*, 57 Mass. App. Ct. 1110, 784 N.E.2d 50, 2003 WL 549058 (Feb. 26, 2003)) appears as Document No. 5 in the Supplemental Answer.

On March 18, 2003, Mr. Patnod filed an application for further appellate review in the Supreme Judicial Court of Massachusetts.[6] That application was denied without opinion on April 30, 2003.[7]

Mr. Patnod filed his petition for writ of habeas corpus in this Court on April 30, 2004. He currently remains in custody of the Massachusetts Department of Correction at MCI-Cedar Junction.

## STATEMENT OF THE CASE

There is no dispute that two men who were passengers in a taxicab robbed the taxi driver, Daniel Archibald, in Worcester during the early hours of December 15, 1989, and put Mr. Archibald briefly into the trunk of the cab. There is also no dispute that one of the men used a knife to cut Mr. Archibald across the throat, that Mr. Archibald escaped, and that the two men drove off in the cab. At issue was whether the petitioner, Mark Patnod, was one of those men. Mr. Patnod asserts that the Commonwealth obtained his conviction in violation of his federal constitutional rights, through use of originally shaky identifications that were later bolstered (and therefore tainted) by the Commonwealth's use of suggestive procedures, and through use of the testimony of two identification witnesses, Susan Chaffee and Sheryl Watkins, who had entered into agreements with the Commonwealth. The Commonwealth not only failed to disclose the existence of those agreements but also, as to Ms. Chaffee, affirmatively represented that no agreement existed.

---

[6]    A copy of the application for further appellate review (hereinafter cited as "FAR App.") appears as Document No. 6 in the Supplemental Answer.

## A. __Events of December 15, 1989__

At approximately 1:00 a.m. on December 15, 1989, Daniel Archibald, a taxicab driver, picked up a passenger in Weymouth and drove him to Worcester. Tr. 47-51. (This is the individual whom the Commonwealth contends was Mark Patnod.) At the request of the original passenger, the cab stopped to pick up an additional person, Gary Chaffee, at an apartment building on Main Street in Worcester. Tr. 51-54, 81-83. Mr. Chaffee and the original passenger were acquainted with each other. Tr. 301-303. Mr. Archibald and the two men drove to several other locations, allegedly trying to find some form of payment to give Mr. Archibald for the taxi fare. Tr. 54-56, 83-86, 91-95. At one point, the original passenger got into the back seat behind Mr. Archibald, putting a knife to his throat. Tr. 56, 98. Sheryl Watkins, a prostitute who happened to be passing by and who recognized Mr. Chaffee, walked up to the passenger's side of the cab, looked in, and asked if Mr. Archibald was all right. Tr. 138-42, 145. She left after the man in the back seat answered, "He's fine." Tr. 142.

Mr. Chaffee drove the cab to a side street, where the other passenger took Mr. Archibald's money and watch, and pushed him into the cab's trunk. Tr. 56-59, 105, 308. The two passengers argued over whether to kill Mr. Archibald. Tr. 60-61. The original passenger then opened the trunk and held a knife to Mr. Archibald's neck. Tr. 62. Mr. Archibald was cut once across the throat, but broke free. Tr. 62, 67, 108-09. The two men drove away in the cab. Tr. 67-68. Worcester Police took Mr. Archibald to the hospital; he was released later that day. Tr. 68.

---

[7]    A copy of the Supreme Judicial Court docket sheet, indicating the denial of the petition for further appellate review, appears as Document No. 7 in the Supplemental Answer. (The Supplemental Answer erroneously lists the date of the denial as April 30, 2004.)

## B.      Evidence Regarding Identification

The major issue at trial was the identity of the original passenger. At trial, Mr. Archibald

and Ms. Watkins both identified Mr. Patnod as the person whom they had seen with Mr. Chaffee

inside the cab. Both had earlier given inconsistent identifications, however. The description that

Mr. Archibald gave to the Worcester Police immediately after the incident--"male, Italian

looking, five foot nine inches tall, medium build," Tr. 194, with black hair, Tr. 113, A. 65, and

with no mention of tattoos, *see* Tr. 98-102, 112-13, 201, 239-40 --does not match Mr. Patnod,

who is approximately 6 feet tall, of large build, with light brown hair, and with conspicuous

tattoos on his wrists and hands. A. 334; *see* Tr. 115, 195-96. The description does, however,

match that of Mark's younger half-brother, Dwayne Patnod, who was living in the Worcester area

at the time. A. 334. Dwayne disappeared on the day after the crime. *Id.*

Less than 24 hours after the incident, the police showed Mr. Archibald numerous

photographs, including separate arrays containing Dwayne Patnod's and Mark Patnod's pictures.

Tr. 178-80, 196-98. Mr. Archibald "practically jumped on" Dwayne's photo, indicating that he

was absolutely sure that Dwayne was the man who had robbed and assaulted him. Tr. 183; *see*

*also* Tr. 74-75, 121-22, 178-83. Although Mr. Archibald examined the other array carefully, he

failed to identify or remark upon Mark Patnod's picture at all. Tr. 180-85. Similarly, Ms.

Watkins, just days after the incident, picked Dwayne's photograph from an array in "seconds,"

indicating that she was absolutely certain that he was the man she had seen in the cab. Tr. 199;

*see also* Tr. 144-45, 189-90.

Several months after the incident, the police showed Mr. Archibald a single photograph

of Mark Patnod and conveyed the information that his fingerprint was found on the cab. A. 240;

8

M.Tr. 35; Tr. 132. Mr. Archibald then concluded that the man in that photograph looked "a little bit more like" his assailant. M.Tr. 24.

Mr. Archibald and Ms. Watkins viewed Mr. Patnod at the probable cause hearing on March 8, 1990, when Mr. Patnod, wearing leg irons, shackles, and prison garb, was led right past them by court officers. A. 332-33. He was seated alone at counsel table with his attorney. A. 333. His was the only case being heard in that courtroom at the time. A. 332. It was clear that he was the defendant; the judge even identified him by name before the witnesses were sequestered. A. 223-24, 333. At no point did his attorney, Herbert Bober, seek to prevent the witnesses from seeing Mr. Patnod in restraints and prison garb by requesting, for example, that Mr. Patnod be seated among a larger audience in ordinary attire, or presented to the witnesses in a formal or informal lineup. A. 333.

At the probable cause hearing, Mr. Archibald identified Mr. Patnod as his assailant. A. 225. Ms. Watkins, who had Mr. Patnod confused with his brother, *see* A. 241-43, 248-50, did not identify him on the record. She admitted that Mr. Patnod "look[ed] a little different" from his brother's photograph. A. 243. Afterward, the police spoke with Ms. Watkins about her identification. M.Tr. 44; Tr. 149-50. She and Mr. Archibald identified Mr. Patnod at trial. Tr. 52-53, 141.

At trial, the Commonwealth presented the testimony of Mr. Archibald; Ms. Watkins; three police detectives, who described the identification procedures used; and fingerprint officer Margaret Ryan, who (testifying as an expert for the first time) stated that she had been able to analyze only one partial, smudged print from the cab. Tr. 214-16, 226-32. Pursuant to a detective's instructions, she compared that print only to Mr. Patnod's and Mr. Chaffee's file prints. Tr. 216, 223, 225. She did not compare the print to those of Dwayne Patnod, nor did she

submit it to the Massachusetts State Police's AFIS computer system. Tr. 221, 227-28, 233.

Officer Ryan opined that the fingerprint was that of Mark Patnod, but admitted that the smudged

nature of the print, as well as dirt and air pockets appearing on it, could interfere with analysis

and identification, Tr. 225-26, 232-33; that the fingerprint pattern in question was very common

in the general population, Tr. 224; and that she could not tell when the print had been placed on

the taxicab, or how long it might have been there. Tr. 232.

The Commonwealth also presented the testimony of Susan Chaffee, who had not testified

in any previous proceedings. Ms. Chaffee testified that she knew both Mark and Dwayne

Patnod. Tr. 162-63. She stated that, at approximately 2:00 a.m. on December 15, 1989, she and

her husband were awakened by someone shouting for Gary outside their second-floor apartment.

Tr. 160-61, 302. She went to the window and looked down approximately 25 feet. Tr. 161-62,

168-69. Although she is very nearsighted, she was not wearing her glasses. Tr. 166, 169,

301-02. In the darkness, she saw a man, who she stated was Mark Patnod. Tr. 162. Gary

Chaffee left to join the man, returning about an hour later. Tr. 163-64.

In addition to testifying on the first day of trial during the Commonwealth's case-in-chief,

Ms. Chaffee testified as a rebuttal witness on the second day, after her husband testified as part of

Mr. Patnod's case. She was the final witness the jury heard before the closings.

Tr. 329-34.

Mr. Patnod, who did not testify, called Gary Chaffee and two alibi witnesses, Pearl and

David Weeks. Mr. Chaffee, testifying against the advice of his attorney, Tr. 297, and against his

own interest, Tr. 311, 322,[8] stated that Dwayne Patnod, and not his half-brother Mark, had

---

[8]   Mr. Chaffee's criminal case, arising from the same incident, was pending at the time. Tr. 311.
He alluded to pressure that the prosecutor had exerted to prevent him from testifying at Mr. Patnod's
trial. Tr. 322.

committed the crime with him on December 15, 1989. Tr. 302-13; *see also* N.Tr.I, 105; A. 325. Ms. and Mr. Weeks testified that Mark Patnod had been at their home in Winchester, New Hampshire throughout the time when the crime was committed. Tr. 259-90.

C.    **Evidence Regarding Commonwealth's Agreement with Susan Chaffee**

1.    **Evidence and Prosecutor's Closing Argument at Trial**

On November 29, 1990, one day before Mr. Patnod's trial, Ms. Chaffee pled guilty to possession of heroin with intent to distribute. Mr. Patnod's trial attorney, Leonard Mancuso, knew of the plea, and attempted to impeach Ms. Chaffee with it. Tr. 169-70. What he did not know, because the Commonwealth had failed to disclose it, was that the Commonwealth had an understanding with Ms. Chaffee that her six- to ten-year committed sentence for her heroin offense would be reduced if she testified against Mr. Patnod.

The questions asked on redirect by the prosecutor, Worcester County Assistant District Attorney Thomas Landry, and Ms. Chaffee's responses thereto, emphasized the lack of any agreement between the Commonwealth and Ms. Chaffee:

Q:    Ms. Chaffee, did you plead guilty to a particular sentence the other day –

A:    Yes.

Q:    -- in this courthouse? *And the sentence that you pleaded guilty to have anything to do with this case?*

A:    No.

Q:    When did you first learn about the sentence that was going to be recommended in your case? Approximately how long ago?

A:    It was during my trial. While it was going to court. Couple of months ago.

Q:    Okay. *And did I ever make you any promises or offers about your case?*

A:    *No.*

11

Tr. 174 (emphasis added).

      In his closing, Mr. Landry affirmatively represented to the jury that Ms. Chaffee

had received and would receive no consideration in exchange for her testimony:

> *Susan Chaffee took her medicine on her own case, got her 6 to 10, and she
> got nothing from it in terms of that sentence.* She says she got a stay until
> the day after Christmas. *She got a 6 to 10. That is her sentence.* Not
> because of me, not because of anybody. She took it. But she had
> information that was helpful....

Tr. 359-60 (emphasis added).

**2.**      **Evidence Discovered After Trial and Presented in
Support of Mr. Patnod's Motion for a New Trial**

      After trial, Mr. Patnod discovered evidence of an informal but very real agreement

between the Commonwealth and Ms. Chaffee, whereby she agreed to testify against him in

exchange for a lenient disposition of her heroin offense. The Commonwealth failed to disclose

this agreement to Mr. Patnod. The relevant evidence, as presented at the evidentiary hearing

before the Worcester Superior Court (and in affidavits and other submissions to that court) on

Mr. Patnod's motion for a new trial, is summarized below.

      On February 6, 1990, the Worcester Police arrested Ms. Chaffee and charged her with

possession of heroin with intent to distribute within a school zone; possession with intent to

distribute; possession; and unlawful possession of a firearm and ammunition. N.Tr. II, 4.  She

was subsequently indicted for those offenses. *Commonwealth v. Susan Chaffee a/k/a Susan

Quattrucci*, Crim. Nos. 90-2541 to 90-2545. A. 343-74.  A. 344-374.  A school zone offense

carries a mandatory minimum sentence of two years in prison. M.G.L. c. 94C, §32J.  Mr.

Landry, who was assigned to prosecute Mr. Patnod's case as of May 1990, knew from

12

approximately that date that Ms. Chaffee was a potential witness in his case, N.Tr.II, 153-54, and knew of the charges pending against her. *Id.* at 128.

In September 1990, Assistant District Attorney Donald Progen, from the same office as Mr. Landry, was assigned to prosecute Ms. Chaffee's case. N.Tr.II, 70. Attorney Maria Scozzafava, employed by the Committee for Public Counsel Services ("CPCS"), was assigned to represent Ms. Chaffee as of September 1990. N.Tr.I, 42.

Mr. Landry wanted to obtain Ms. Chaffee's testimony in Mr. Patnod's case, N.Tr.II, 127-28, 131-34, 155-56, a fact that Ms. Chaffee and Ms. Scozzafava knew as of at least November 1990. N.Tr.I, 23-24; II, 6, 11. Mr. Landry considered Ms. Chaffee a "significant" witness because she had some familiarity with Mr. Patnod, was married to Mr. Chaffee, and, he believed, would be able to identify Mr. Patnod as having been present at "a crucial time." N.Tr. II, 133. Ms. Chaffee did not want to testify. N.Tr.I, 100; II, 7, 37, 155. Mr. Landry believes that Ms. Scozzafava approached him about "intervening in [Ms. Chaffee's] case as a condition of [her] testifying." N.Tr.II, 129; *see also id.* at 130, 166-67. He also met privately with Ms. Chaffee, probably more than once, before the entry of her plea, *id.* at 38, 62, 150-51, to discuss "what she would have to say on the stand were she to testify" in Mr. Patnod's case. *Id.* at 155. In addition, Mr. Landry spoke with Ms. Chaffee by telephone, probably more than once. *Id.* at 37-38, 154-55.

In November 1990, Ms. Scozzafava discussed a plea agreement with Mr. Progen. N.Tr.I, 21-24. In exchange for a plea of guilty in a school zone case, the District Attorney's office at that time typically recommended either a five- to seven-year committed sentence (including two mandatory years) on the school zone charge, or a six- to ten-year committed sentence (with no mandatory portion) on a reduced charge of possession with intent to distribute. N.Tr.I, 21-23, 63.

13

Ms. Chaffee was a heroin addict with a criminal record. Tr. 171; N.Tr.II, 51-52, 64; A. 375-82.
She and Mr. Chaffee had an infant son (born April 1, 1990), on account of whom Ms. Chaffee
very much wanted to avoid prison. N.Tr.I, 105; II, 8, 52-53, 65.

In the context of their plea discussions, Mr. Progen told Ms. Scozzafava that "there was
another case that was going on, and that [the Commonwealth] would like to speak to [Ms.
Chaffee] in regards to that case to possibly testify in that case." N.Tr.I, 23-24; *see also id.* at
47-48. Ms. Scozzafava raised the issue of consideration ("what's in it for her"). N.Tr.I, 48; II,
77, 85, 104. Mr. Progen stated that he referred Ms. Scozzafava to Mr. Landry to discuss that
issue, N.Tr.II, 77, 85, 104, although Ms. Scozzafava recalls dealing only with Mr. Progen at this
point. *See* N.Tr.I, 34.

On November 29, 1990, the day before Mr. Patnod's trial began, the Commonwealth and
Ms. Chaffee reached an agreement. The Commonwealth agreed, in exchange for her guilty plea,
to reduce the school zone charge to possession of heroin with intent to distribute; to dismiss the
other charges; and to recommend a six- to ten-year committed sentence, with no mandatory
minimum. N.Tr.I, 24, 27-28. This much of the agreement was placed on the record before Judge
Travers (who imposed the recommended sentence) at her plea hearing on that date.
A. 423-44, 431-32. In addition to the terms disclosed on the record, however, the
Commonwealth and Ms. Chaffee also agreed that, if Ms. Chaffee testified against Mr. Patnod at
his trial, something favorable would happen with regard to her sentence. N.Tr.I, 24-27, 51, 56-
58, 86-87. Although the exact benefit was not specified in advance, it was definitely implied,
and Ms. Scozzafava understood, that if Ms. Chaffee testified against Mr. Patnod, "she would be
taken care of," *id.* at 57, 58, and that her sentence would be reduced by means of a subsequent
motion to revise and revoke. *Id.* at 27-29, 51, 56-58, 65-66, 86-87. Ms. Scozzafava discussed all

14

terms of the proposed agreement with her client, including the understanding as to the benefit

that Ms. Chaffee would gain in exchange for testifying, before Ms. Chaffee decided to accept the

agreement. *Id.* at 60; *see* A. 425-26.

Where a defendant is a witness in another case, the usual practice of the Worcester

County District Attorney will typically postpone either disposition or sentencing until after the

testimony has been taken in that case. N.Tr.II, 86-87, 110, 116-17, 145-46. By postponing

ultimate determination of the sentence and keeping the witness-defendant's fate in the balance,

the Commonwealth ensures that the person will appear at trial and has the opportunity to assess

the person's testimony. *Id.* at 87, 110-11, 145-46. The usual procedures were not followed in

Ms. Chaffee's case, however. Rather, the Commonwealth achieved the same effect in a less

obvious way by agreeing to stay execution of Ms. Chaffee's sentence for approximately a month,

until December 26, 1990, A. 431-32, by which date Mr. Patnod's trial could be expected to be

completed. N.Tr.I, 63; II, 116-17, 145-46.

On the day of Mr. Patnod's conviction, Ms. Scozzafava came to Court intending to file a

motion to revise and revoke Ms. Chaffee's sentence. N.Tr.I, 30; A. 416. She encountered

"someone from the Commonwealth," however, N.Tr.I, 31,[9] who told her "not to file at that

time," but assured her that "there wasn't gonna be a problem." *Id.* at 30. Ms. Scozzafava waited

several weeks, filing the motion on December 20, 1990. N.Tr.I, 30; A. 348, 419.

The motion consists of one sentence, stating no reason for the relief requested. A. 416.

As was her practice, Ms. Scozzafava explained the reasons in a supporting affidavit, which she

filed together with the motion. N.Tr.I, 32-33; A. 417. The affidavit refers to Ms. Chaffee's

---

[9] Ms. Scozzafava could not recall with whom she spoke. N.Tr.I, 30. Mr. Landry did not recall
discussing the timing of the motion with her, N.Tr.II, 170-71, but did not deny that he could have done
so.

15

testimony at Mr. Patnod's trial, and states that Mr. Progen advised Ms. Scozzafava to file the motion to revise and revoke. N.Tr.I, 32; A. 417. A copy of the affidavit appears in the CPCS' file on Ms. Chaffee's case. N.Tr.I, 15. Mr. Progen stated that he never saw the affidavit, N.Tr.II, 99-100; Mr. Landry could not recall whether he had, but agreed that he would expect an affidavit to accompany the motion. *Id.* at 171-72. For unexplained reasons, however, Ms. Scozzafava's affidavit does not appear in the Court's file. *See* A. 348.

On December 20, 1990, Mr. Landry told Ms. Scozzafava that the Commonwealth had, on its own initiative, extended Ms. Chaffee's stay of execution until January 8, 1991. N.Tr.I, 34-35; N.Tr.II, 106; A. 419.

On January 7, 1991, Mr. Landry informed Ms. Scozzafava that the Commonwealth would recommend a complete suspension of Ms. Chaffee's six- to ten-year committed sentence. N.Tr. I, 35-37; A. 419. Mr. Landry had advocated this recommendation to the District Attorney, who had approved it. N.Tr.II, 170. This result was even more favorable than Ms. Scozzafava had hoped (she had expected a reduction rather than total suspension of the sentence). N.Tr.I, 36-37, 51, 56-57, 60, 74. Mr. Progen implied that he was not pleased with the degree of leniency shown to Ms. Chaffee, but that he was overruled. *Id.* at 97-98, 109.

The hearing on Ms. Chaffee's motion to revise and revoke was held on January 8, 1991 before Judge Travers. N.Tr.I, 37; A. 434-46. Under the District Attorney's normal practice, Mr. Progen, as prosecutor of Ms. Chaffee's case, would have represented the Commonwealth. N.Tr.I, 38; II, 97. Mr. Landry appeared instead, however. N.Tr.I, 37-38; II, 97, 169; A. 437-45. Although he took the position that the Commonwealth was merely assenting to Ms. Chaffee's motion, A. 438, in fact it was Mr. Landry, more than Ms. Scozzafava, who spoke on Ms. Chaffee's behalf, arguing for the complete suspension of her committed sentence. *See* A. 437-

16

39. He cited the Commonwealth's alleged concern for Ms. Chaffee's safety, due to the fact of

her testimony in Mr. Patnod's case. A. 439-40. Neither Mr. Landry nor Ms. Scozzafava offered

any other reason for reduction of the sentence. *See* A. 437-41.

Mr. Landry also went out of his way to negate a proposition that no one in the courtroom

had raised: namely, that the suspension of Ms. Chaffee's sentence constituted a reward for her

testimony in Mr. Patnod's case. A. 440-41. He devoted at least as much, if not more, time to

"covering" the Commonwealth on that point as he did to safety. *Compare* A. 439-40 *with* A.

440-41.

Judge Travers allowed the motion, suspending Ms. Chaffee's six- to ten-year committed

sentence and placing her on two years' probation. A. 442-44. As a result, Ms. Chaffee did not

serve even one day for the felony to which she pled guilty. N.Tr.I, 85-86, 112; II, 57. The

reduction of Ms. Chaffee's sentence—from a lengthy committed sentence to probation—was

highly unusual. Mr. Progen, in eighteen years of experience with the District Attorney's office,

N.Tr.II, 69-70, had only seen it happen "a few times," *id.* at 110, and Mr. Landry conceded that

even where safety concerns are involved, defendants do not all get "the street." *Id.* at 178.

Some time later, Ms. Chaffee told Mr. Chaffee that she had agreed to testify against Mr.

Patnod in exchange for not going to prison on her drug charges. N.Tr.I, 99-100, 102-05. She

stated that, although she didn't know the identity of the man outside her apartment on the night in

question, *id.* at 108, "she ha[d] to finger Mark Patnod to stay out of jail for her agreement." *Id.* at

102; *see also id.* at 99-100, 104, 120; A. 326-27.

### D.   Evidence Regarding Commonwealth's Agreement with Sheryl Watkins

In 1999, after he had filed his motion for new trial, but before the evidentiary hearing on

that motion, Mr. Patnod learned of an undisclosed agreement between the Commonwealth and

17

another witness who had testified at trial against him, Ms. Watkins. On December 6, 1999, he amended his motion for a new trial to include this evidence as well. The evidence is summarized below.

On January 25, 1990, which was after Mr. Patnod's arrest but before his trial or any evidentiary hearings in his case, Ms. Watkins was arraigned in Worcester County District Court on charges brought against her by the Worcester Police for illegal possession of a Class B substance and for trespassing. A. 396. In March 1990, Ms. Watkins testified at Mr. Patnod's and Mr. Chaffee's probable cause hearing.

The disposition of Ms. Watkins' case occurred on July 3, 1990, i.e., after the probable cause hearing in Mr. Patnod's and Mr. Chaffee's cases but before Mr. Patnod's suppression hearing and trial. *Id.* On July 3, 1990, Ms. Watkins entered a plea of guilty to both of the charges against her. *Id.* Ms. Watkins had a prior record; one can infer that she was well known to the Worcester Police, having frequently been arrested by them for prostitution and related offenses. *See id.*, A. 384-394; Tr. 145-46. She received a relatively light sentence, however, amounting to time already served in the House of Correction (nine days). A. 396. In her case, the District Attorney's office appears to have followed its usual procedure, *see* N.Tr. II, 86-87, 110, 116-17: once she was "locked in" to her testimony through the record of the probable cause hearing, she received a favorable disposition on her pending charges.

At the probable cause hearing in Mr. Patnod's and Mr. Chaffee's cases in March 1990, Mr. Chaffee's attorney attempted to suggest that the charges pending against Ms. Watkins created a motive for her to want to help the Commonwealth. P.C. Tr. 95-96. Mr. Patnod's attorney made the same suggestion at trial. Tr. 145-47. He was not able to cross-examine her about an agreement with the Commonwealth, however, because none had been disclosed.

18

At the hearing on Mr. Patnod's motion for new trial, an acquaintance of Ms. Watkins' from Worcester, Dwayne Burrell, testified that he had met Ms. Watkins in the spring of 1996. N.Tr. I, 148-151. She remarked on his first name, which led to a conversation about Dwayne Patnod. *Id.* at 149-52. Ms. Watkins told Mr. Burrell about an agreement that she had made several years previously with the Commonwealth whereby, in exchange for avoiding jail time on charges pending against her, she had to identify a white man named Mark Patnod at his trial for assaulting a cab driver, even though she had previously identified his brother Dwayne as the perpetrator and knew that Mark had not committed the crime. *Id.* Mr. Burrell remembered this because his first name is the same as Dwayne Patnod's and because Mr. Burrell, who, like Ms. Watkins, is African-American, thought it unusual to hear of a white man with that name. N.Tr. I, 151; III, 8, 17.

Mr. Burrell disclosed this information to Mr. Patnod in approximately August 1999, when both were incarcerated in the same unit at MCI Cedar Junction. N.Tr. I, 155-56. Mr. Patnod happened to mention his brother Dwayne's name and the fact that he was from Worcester, which revived Mr. Burrell's memory of his conversation with Ms. Watkins and caused him to connect it with Mr. Patnod. N.Tr. I, 155.

At the evidentiary hearing on the motion for new trial, the Commonwealth did not call Ms. Watkins to rebut Mr. Burrell's testimony. Mr. Landry, when asked, said only that he "did not recall" offering Ms. Watkins consideration in exchange for her testimony in Mr. Patnod's case. N.Tr.II, 149.

### E.    Ineffective Assistance of Counsel

Mr. Patnod argued, on his motion for new trial, that he had been denied the effective assistance of counsel at both his probable cause hearing and his trial. His attorney at the probable

19

cause stage, Mr. Bober, failed to take steps to prevent two of the witnesses, Mr. Archibald and Ms. Watkins from seeing Mr. Patnod in highly suggestive circumstances, which almost certainly led these witnesses to identify him as the perpetrator, both at the probable cause hearing (Mr. Archibald) and at trial (both witnesses).

Mr. Patnod's trial attorney, Mr. Mancuso, failed to provide him with effective assistance in a number of ways. Mr. Mancuso failed to obtain certified copies of the prior convictions of the non-police prosecution witnesses (Mr. Archibald, Ms. Watkins, and Ms. Chaffee), thereby foreclosing an entire subject of impeachment. He failed to obtain Mr. Archibald's medical records or the testimony of a medical expert, or otherwise to develop facts about Mr. Archibald's bipolar disorder, or manic-depressive illness, and medications that Mr. Archibald may or may not have taken on the evening in question, thereby foreclosing impeachment with regard to the victim's ability to observe and remember, which would be particularly important in a case such as this, turning on eyewitness identification. Mr. Mancuso failed to make any attempt to compel Dwayne Patnod, whom two eyewitnesses had picked without hesitation from photo arrays and whose description matched the descriptions given by the eyewitnesses, to appear at trial so that the jurors could have observed the dramatic differences between the two men. Mr. Mancuso failed to obtain a certified copy of the transcript of the probable cause hearing, which inhibited his attempts to impeachment the witnesses who had testified at that hearing. He also failed to move for a required finding of not guilty at the close of the Commonwealth's case. Lastly, he failed to object to misconduct by the prosecutor (characterizations of the evidence that were unsupported by the testimony) during closing argument.

20

### F.    Denial of Post-Trial Discovery Motion

On or about March 3, 1997, in connection with his motion for new trial, Mr. Patnod filed

a motion with the trial court seeking discovery of all Commonwealth records relating to its

prosecution of Susan Chaffee for her February 6, 1990 offenses. A. 5, 399-400. The motion was

granted as to documents reflecting negotiations, agreements, or conversations between Ms.

Chaffee and law enforcement officials. A. 5.

On or about September 16, 1999, Mr. Patnod filed a motion for further discovery, seeking

copies of all documents relating to the prosecutions of Ms. Chaffee and her co-defendant, Roland

Gallant, on the February 6, 1990 charges, and all documents relating to the prosecution of Mr.

Patnod on the charges at issue in this case. A. 7, 402-405. (Mr. Gallant's file was relevant

because Mr. Patnod had learned that Mr. Gallant, who had been charged with the same offenses

as Ms. Chaffee, had received a disposition that was less lenient than the outcome that she

ultimately received, lending support to his position that Ms. Chaffee's original sentence was

imposed merely for show. A. 403-404.)  On September 24, 1999, the trial court heard this

motion and took it under advisement. The Commonwealth had also filed a motion for discovery

of CPCS' files in Ms. Chaffee's case, which the Court found was mooted by Ms. Chaffee's

agreement to release portions of that file. A. 7. On October 5, 1999, Mr. Patnod filed a

supplemental memorandum in support of his motion, attaching copies of relevant documents

from the CPCS file and arguing that, as those documents pointed to ongoing, substantive contacts

between Ms. Chaffee's attorney, Maria Scozzafava, and the prosecution team in his case, he

should be permitted to review the Commonwealth's files in his case, Ms. Chaffee's, and Mr.

Gallant's to ascertain whether those files contained documents relevant to the existence of an

agreement between Ms. Chaffee and the Commonwealth.  A. 406-419. In the alternative, he

21

asked that the trial court conduct an *in camera* review of the files. *Id.* The motion was denied. A. 7.

The evidentiary hearing on the motion for new trial, limited to evidence as to the existence of an agreement between the Commonwealth and prosecution witnesses, proceeded on December 6, 7, and 30, 1999. Mr. Patnod presented the testimony of Maria Scozzafava, Gary Chaffee, and Dwayne Burrell. The Commonwealth presented testimony of Susan Chaffee, Thomas Landry, and Donald Progen.

### THE TRIAL COURT'S DECISION ON THE MOTION FOR NEW TRIAL

The Worcester Superior Court, in its opinion issued January 8, 2001, denied Mr. Patnod's motion for new trial. The judge concluded that the Commonwealth had made no promises, rewards, or inducements either to Ms. Chaffee or to Ms. Watkins. A. 523-528. The judge also ruled that the trial court had not violated Mr. Patnod's rights by allowing Mr. Archibald and Ms. Watkins to make in-court identifications of Mr. Patnod at trial, despite the fact that the police before trial had conducted a suggestive out-of-court show-up of a single photograph of Mr. Patnod. A. 528-529. Lastly, the judge found that Mr. Patnod had not received ineffective assistance of counsel. A. 529-532.

### MR. PATNOD'S STATE COURT APPEAL

On his appeal to the Massachusetts Appeals Court both from his original conviction and from the denial of his motion for a new trial, Mr. Patnod argued that the trial court had committed reversible error in concluding that no agreement existed between the Commonwealth and the two witnesses in question. He argued that the trial court's conclusion that no agreements existed was unsupported by the evidence, and that the Commonwealth's failure to disclose the existence of the agreements violated his state and federal constitutional rights. He also argued

22

that the trial court had violated his state and federal constitutional rights by failing to suppress all

identifications of him by Mr. Archibald and Ms. Watkins, subsequent to the suggestive

circumstances in which he was first pointed out to them, and by failing to order a new trial on

those grounds. Mr. Patnod further argued that he had received ineffective assistance of counsel

in pretrial proceedings and at his trial, in violation of his state and federal constitutional rights,

and that the trial court had erred in finding to the contrary and in refusing to order a new trial on

that basis. He also raised as reversible error the trial court's failure to find that the prosecutor

had committed prejudicial misconduct in his closing and to grant a new trial because of it, and

the trial court's denial of his motion for discovery of the Commonwealth's files in Ms. Chaffee's

case, Mr. Gallant's case, and his own.

The Massachusetts Appeals Court upheld the trial court's findings that the

Commonwealth had not entered into agreements with either Ms. Chaffee or Ms. Watkins. The

Appeals Court deferred to the trial judge as the arbiter of credibility. The Appeals Court also

upheld the trial court's conclusions that there had been no prosecutorial misconduct and that the

in-court identifications of Mr. Patnod by Mr. Archibald and Ms. Watkins had independent bases.

The Appeals Court also concluded that Mr. Patnod had not shown that he had received

ineffective assistance of counsel, and that the judge's denial of Mr. Patnod's post-trial discovery

motion was not improper.

In his application to the Supreme Judicial Court of Massachusetts for further appellate

review, Mr. Patnod argued that the trial court and the Appeals Court had ignored facts relevant

to the existence of agreements between the Commonwealth and prosecution witnesses, and had

erred in their conclusions with regard to the use of the in-court by Mr. Archibald and Ms.

Watkins, prosecutorial misconduct, ineffective assistance of counsel, and failure to permit